UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOGAR AGUDO-MONROY,<br><br>                                    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                                    Respondent. | Case Nos.:  19-cv-0459; 15-cr-1631<br><br>**ORDER:**<br><br>**(1) DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 (Doc. Nos. 2, 125)**<br><br>**(2) DENYING AS MOOT PETITIONER'S MOTION FOR APPOINTMENT OF COUNSEL (Doc. No. 140)** |

Before the Court is a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 filed by pro se Petitioner, Bogar Agudo-Monroy. The United States filed a response in opposition, to which Petitioner replied. For the following reasons, the Court **DENIES** the petition, **DENIES** a certificate of appealability, and **DENIES AS MOOT** Petitioner's motion for appointment of counsel.

## I. BACKGROUND[1]

**A. Factual Background**

On May 27, 2015, while conducting anti-smuggling operations along the Interstate-15 in the Southern District of California in a marked patrol unit, Border Patrol Agents, Bela Bano and Damian Caraway, observed Petitioner driving a white Mitsubishi Mirage with Baja California Mexico license plates. According to the agents, the Mitsubishi was being driven at a slower speed than normal traffic, and its occupants' body language and posture appeared nervous. As the agents followed the Mitsubishi along the I-15, they conducted a records check on the Mitsubishi and discovered that the vehicle was driven by a different person through the port of entry 80 minutes earlier. The agents also observed that Petitioner appeared to be evading the Border Patrol vehicle by decelerating the Mitsubishi and changing lanes to exit the highway. They then observed Petitioner suddenly cross two lanes of traffic to pull into a Mobil Gas Station, where he parked the vehicle next to a fuel pump. The agents drove into the gas station and stopped their vehicle two car lengths behind the Mitsubishi. Petitioner and his passenger, Segura, exited the Mitsubishi and approached the agents. Petitioner engaged in a conversation with Agent Bano, asking him "What's going on?" Agent Bano informed Petitioner that he was not stopped, and the two engaged in a conversation regarding where Petitioner came from and where he was headed. Agent Bano then asked for Petitioner's consent to search the Mitsubishi along with his K-9 partner, and Petitioner consented.

The K-9 alerted to the vehicle, and Agent Bano observed a strong gasoline odor emanating from the vehicle. The agents noticed that the vehicle's gas gauge displayed a reading above full and that the fuel tank bore fresh tool marks on it. The agents transported Petitioner, Segura, and the Mitsubishi to the I-15 Border Patrol Checkpoint. There, agents inspected the fuel tank and found 26 packages of a white substance, which field-tested

---

[1] The factual background is gleaned from the trial transcripts in the underlying criminal case, which the United States and Petitioner cite in their briefs.

positive for methamphetamine, and after a DEA laboratory analysis, were later revealed to be approximately 11.39 kilograms of methamphetamine. The agents arrested Petitioner and Segura for smuggling narcotics.

### B. Trial Court Proceedings

After being charged with Possession of Methamphetamine with Intent to Distribute, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1), and Aiding and Abetting, in violation of 18 U.S.C. § 2, Petitioner entered a not guilty plea. The parties filed, and the Court ruled on, various pre-trial motions to preserve evidence, compel discovery, and to exclude certain evidence. On the first day of trial, Agents Bano and Caraway testified about their encounter with the Mitsubishi and Petitioner. The next day, the case agent, DEA chemist, and value expert testified for the United States. The Court also allowed the testimony of HSI Special Agent Jarrod Pasciucco who arrested Petitioner in 2010 for importing marijuana in a gas tank. Petitioner thereafter made an oral motion for judgment of acquittal under Rule 29, which the Court denied. Then, Petitioner testified and asserted his lack of knowledge that there was methamphetamine in the vehicle he was driving. That same day, the jury returned a verdict of guilty.

On October 11, 2016, the Court held a hearing on Petitioner's motion for a new trial, which the Court denied. That same day, the Court sentenced Petitioner to 120 months in custody. With new appellate counsel, Petitioner timely noticed his appeal the following day.

### C. Appellate Proceedings

On appeal, Petitioner argued that (1) the case agent's testimony about deconflicting Petitioner's cellphone, (2) the case agent's interpretation of his call log, and (3) the introduction of his prior arrest involving packages of marijuana hidden in a gas tank, deprived him of a fair trial. On December 11, 2017, a panel of the Ninth Circuit Court of Appeals affirmed Petitioner's conviction, finding that although the Court erred in allowing testimony regarding the deconfliction of phone numbers in Petitioner's cellphone and testimony interpreting the cell phone log, "these errors [were] harmless, both individually

and cumulatively, in light of the overwhelming evidence of guilt." (Doc. No. 127-3 at 3.) The Ninth Circuit did not find that evidence of the prior arrest amounted to error. (*Id.*) Upon Petitioner's filing of a petition for panel rehearing and rehearing en banc, the panel voted and unanimously denied the petition. Petitioner then filed a writ of certiorari to the Supreme Court, which was subsequently denied on June 25, 2018. The instant motion under 28 U.S.C. § 2255 follows.

## II.  LEGAL STANDARD

A federal prisoner in custody under a sentence of a court may move to vacate, set aside, or correct the sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255. If it is clear the movant has failed to state a claim, or has "no more than conclusory allegations, unsupported by facts and refuted by the record," a district court may deny a § 2255 motion without an evidentiary hearing. *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986).

## III.  DISCUSSION

Petitioner raises three arguments in support of his § 2255 motion. The Court discusses each of the asserted grounds in turn.

### A. Claim of "Irrelevant and Inflammatory" Testimony

First, Petitioner argues that prosecutorial misconduct via the solicitation of "irrelevant and inflammatory testimony," namely, the case agent's testimony regarding deconflicting the numbers in his phone and the meaning of his call and text history, substantially affected his right to a fair trial. (Doc. No. 125 at 4.) The United States asserts that Petitioner's claim is procedurally barred because he already litigated these claims on direct appeal and lost. The Court agrees.

"[A]s a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal." *Foster v. Chatman*, 136

S. Ct. 1737, 1758 (2016) (Alito, J. concurring) (collecting cases). The record shows that Petitioner was unsuccessful in litigating these exact claims on appeal. *See supra* § I.C. As previously mentioned, the Ninth Circuit found that the errors concerning the case agent's deconfliction and call log testimony were "harmless, both individually and cumulatively, in light of the overwhelming evidence of guilt." (Doc. No. 127-3 at 3.) Petitioner does not assert, and the Court does not find, countervailing considerations that warrant departure from the general rule. *Cf., e.g.*, *Davis v. United States*, 417 U.S. 333, 342 (1974) (holding that a petitioner's § 2255 claim that was previously raised on direct appeal is not precluded if the claim is based on "an intervening change in law"). Accordingly, the Court denies Petitioner's motion on this basis.

**B. Claim of Perjury, Racial Profiling, and Ineffective Assistance**

Second, Petitioner asserts that his rights were substantially affected by prosecutorial misconduct because Agents Bano and Caraway offered false statements about the events leading up to his arrest, that the government lacked probable cause and racially profiled Petitioner, and that his trial counsel provided ineffective assistance in failing to raise these issues. (Doc. Nos. 125 at 5; 132 at 23.) The United States contends that these claims are procedurally barred because Petitioner could have, but did not, raise these issues on direct appeal. (Doc. No. 127 at 7.) Even assuming that these claims are not barred, however, they nonetheless fail, as more fully set forth below.

      1. <u>Perjury</u>

Upon careful review of Petitioner's claim, the Court does not find that either Agent Bano or Agent Caraway provided false testimony about the circumstances leading up to his arrest. In support of his perjury claim, Petitioner rehashes the agents' testimony and explains what he perceives to be inconsistencies. (Doc. No. 132 at 8–15.) For instance, Petitioner expresses disbelief over how the agents could observe that his body language and posture appeared nervous while driving on a highway and from a distance. (*Id.* at 9.) Petitioner also claims that Agent Bano's testimony that Petitioner consented to the K-9 search is inconsistent with his personal recollection that the agents conducted the search

"without asking." (*Id.* at 12.) Petitioner further asserts that Agent Bano perjured himself by testifying that what was photographed in Exhibit 6 was what he saw through a small hole underneath the Mitsubishi's back seat. (*Id.* at 14.) The record, however, does not support this or any of his other claims of perjured testimony. Simply put, Petitioner's claims are founded solely on his subjective belief regarding the believability or plausibility of the agents' testimony. And as the Ninth Circuit has held, Petitioner must show evidence of perjury "more serious than some minor inconsistencies and inaccuracies which must have been self-evident to the jury." *Black v. United States*, 269 F.2d 38, 43 (9th Cir. 1959). The Court therefore declines to find that the agents perjured themselves. Accordingly, Petitioner's claim that his rights were substantially affected by perjured testimony is without merit.

        2. <u>Racial Profiling</u>

Petitioner's claim of an unlawful stop and search of his vehicle is also unavailing. As the record demonstrates, the agents did not stop Petitioner's vehicle. Indeed, at the time Petitioner exited the highway on his own accord, the agents were driving ahead of him. The agents exited the highway and pulling into the Mobil gas station only after Petitioner did. And they did so without flashing the Border Patrol vehicle's lights or soundings its siren. Consequently, because "there was no intentional government action directed at [Petitioner] to bring about the stop of his vehicle, there could be no Fourth Amendment 'seizure.'" *United States v. Al Nasser*, 555 F.3d 722, 731 (9th Cir. 2009). As further evidence of the consensual encounter with the agents, it was Petitioner who decided to approach the agents, and he was informed he that he was not being detained. In fact, Agent Caraway testified that he observed that "Agent Bano had spoke[n] with the defendant and basically advised him that we didn't stop him and asked if he could ask him a series of questions, to which the defendant was calm at that point and said, 'Yes.'" (Doc. No. 127-1 at 259.) Petitioner therefore could not have reasonably believed that he was not free to leave. *Cf. I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) (noting that an initial consensual encounter can evolve into a seizure "if, in view of all the circumstances surrounding the

incident, a reasonable person would have believed that he was not free to leave.") (citation omitted).

Even if the Mitsubishi was "stopped," the agents had the requisite reasonable suspicion of criminal activity to justify the stop. A reasonable suspicion determination entails consideration of "the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citation omitted). Such consideration "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.*

> In the context of Border Patrol searches, the factors to be considered in determining whether "reasonable suspicion" exists to justify stopping a vehicle include, but are not limited to: 1) characteristics of the area; 2) proximity to the border; 3) usual patterns of traffic and time of day; 4) previous alien or drug smuggling in the area; 5) behavior of the driver, including "obvious attempts to evade officers"; 6) appearance or behavior of passengers; 7) model and appearance of the vehicle; and, 8) officer experience.

*United States v. Garcia-Barron*, 116 F.3d 1305, 1307 (9th Cir. 1997) (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975)).

Here, Agents Bano and Caraway's respective testimony as to their particularized and objective observations of the Mitsubishi and its driver established reasonable suspicion. As previously mentioned, Petitioner's vehicle was driving noticeably slower than the average traffic, the vehicle bore Baja California plates, and its occupants' demeanor signaled nervousness and concealment to the trained agents. Additionally, Agent Bano's record check of the Mitsubishi revealed that a different driver with no passenger drove the vehicle into the port of entry approximately 80 minutes prior. Agent Caraway testified that, based on his years of experience with Border Patrol, this observation is consistent "a driver swap-out," a technique used by smugglers. (Doc. No. 127-1 at 252.) The agents further

observed that Petitioner appeared to be evading them by suddenly exiting the highway and quickly crossing several lanes of traffic.

Considering the totality of circumstances, the Court finds that Petitioner's claim of racial profiling is without merit. The agents' observations were particularized and objective. Consequently, assuming that Petitioner was "stopped," the Court finds that the agents had reasonable suspicion of criminal activity to justify the stop. *See Arvizu*, 534 U.S. at 273; *Garcia-Barron*, 116 F.3d at 1307. Lastly, the record also shows that the search of Petitioner's vehicle was consensual. Both Agent Bano and Petitioner testified that Petitioner consented to the hand and K-9 search of the vehicle. (Doc. Nos. 127-1 at 209–210; 127-2 at 121.) Thus, there was no unlawful search in violation of the Fourth Amendment. Based on the foregoing, Petitioner's claim of racial profiling in the events leading up to his arrest fails.

### 3. Ineffective Assistance of Counsel

Petitioner further claims that his trial counsel provided ineffective assistance in failing to raise the aforementioned issues of perjured testimony and racial profiling. The Court disagrees. To prevail on an ineffective assistance of counsel claim, Petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first prong of the *Strickland* test, the Court considers whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir.2002). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. There is a "strong presumption that counsel's conduct falls within the wide range of professional assistance." *Id.* at 689; *United States v. Molina*, 934 F.2d 1440, 1447 (9th Cir.1991). Under the prejudice prong, Petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In this case, Petitioner's trial counsel did not provide deficient performance in failing to raise issues of perjured testimony and racial profiling on a motion to suppress because, as made clear in the preceding sections, the evidence does not support such claims. Trial counsel received and reviewed the hundreds of pages of discovery and DVDs pertaining to Petitioner's criminal case. As the record before the trial counsel did not provide an apparent basis to challenge the lawfulness of Petitioner's arrest or the agents' testimony, the Court declines to find that his performance was unconstitutionally deficient. Again, the record reflected that Petitioner consented to the stop and search, and there was no basis to assert a claim of perjury. *See supra* § III.B.1, 2. Otherwise stated, the Court does not find that "no competent attorney would think a motion to suppress would have failed, which is the relevant question under *Strickland*." *Premo v. Moore*, 562 U.S. 115, 124 (2011). Petitioner therefore presents insufficient evidence to rebut the strong presumption that the trial counsel's performance "falls within the wide range of professional assistance." *Strickland*, 466 U.S. at 689; *Molina*, 934 F.2d at 1447.

Consequently, as Petitioner has not met his burden to establish deficient performance, his ineffective assistance of counsel claim on this basis necessary fails. *See Gonzalez v. Wong*, 667 F.3d 965, 987 (9th Cir.2011) (citing *Strickland*, 466 U.S. at 697) ("Because failure to meet either prong is fatal to [Petitioner's] claim, there is no requirement that [the Court] 'address both components of the inquiry if the defendant makes an insufficient showing on one.'").

**C. Claim of Actual Innocence and Ineffective Assistance**

Third, Petitioner claims "actual innocence" and that his trial counsel rendered ineffective assistance by failing to present that Petitioner was unaware that the vehicle contained a commercial quantity of concealed drug, and that there was a legitimate reason for him to have been driving the vehicle. (Doc. No. 125 at 6–7.) At the outset, the Court finds that the trial counsel did, in fact, present to the jury that Petitioner lacked the

19-cv-0459; 15-cr-1631

knowledge required for conviction in this case. Petitioner's ineffective assistance of counsel claim on this basis is therefore without merit.

Turning to Petitioner's remaining claim, "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To succeed on a claim of actual innocence, Petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* (internal quotations omitted) (citing *Schlup v. Delo*, 513 U.S. 298, 327–29 (1995)). Petitioner has not met his burden. Rather, Petitioner repeats the same defenses he testified to at trial—that he had no knowledge that the Mitsubishi he was driving "was being used for nefarious purposes" and that he was simply "driving the vehicle to exchange it for [a] pickup truck so that he could use the truck for his painting business." (Doc. No. 132 at 24.) The jurors considered Petitioner's defense against the government's evidence and found him guilty.

Petitioner presents no new evidence or argument to show that no reasonable juror would have convicted him. To the extent that Petitioner argues that the Ninth Circuit's finding that presentation of the testimony about deconflicting his cell phone and interpreting his call log amounts to new evidence that shows his actual innocence, the Court disagrees. As the Ninth Circuit found, those errors were harmless due to other evidence of guilt. (Doc. No. 127-3 at 3.) Thus, considering what the Ninth Circuit found to be "overwhelming evidence of guilt" *id.*, the aforementioned errors are not, by themselves, enough to demonstrate that no reasonable juror would have found Petitioner guilty. Accordingly, the Court finds that Petitioner has not established "actual innocence." *See generally Schlup*, 513 U.S. at 324 (noting that because reliable evidence supporting a constitutional error "is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.").

//
//
//

10
19-cv-0459; 15-cr-1631

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Petitioner's motion, the briefs filed in support thereof and opposition thereto, and the record in this case, conclusively establish that Petitioner is not entitled to relief. As such, an evidentiary hearing is not warranted in this case. *See* 28 U.S.C. § 2255(b); *Quan*, 789 F.2d at 715. Accordingly, the Court **DENIES** Petitioner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. Nos. 2, 125.) The Court also **DENIES** a certificate of appealability because Petitioner has not "made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). The Court further **DENIES AS MOOT** Petitioner's motion for appointment of counsel.[2] (Doc. No. 140.) The Clerk of the Court is instructed to close the case and enter judgment accordingly.

Dated:  January 12, 2021

Hon. Anthony J. Battaglia
United States District Judge

---

[2] Although styled as a "Motion for Newly Discovered Evidence," Petitioner's supplemental filing (Doc. No. 140) presents no such newly discovered evidence. Instead, Petitioner requests the Court "[t]o please appoint [] new counsel on the grounds of conflict of interest." The Court is unable to discern the conflict of interest alleged. In any event, however, because the Court denies his § 2255 petition, the Court denies as moot his attendant request for appointment of counsel.